RECORD NO. 13-1849

In The

# United States Court of Appeals
### For The Fourth Circuit

## PAUL H. FELDMAN,

*Plaintiff – Appellant,*

**and**

**MARTIN L. PERRY,**

*Plaintiff,*

**v.**

## LAW ENFORCEMENT ASSOCIATES CORPORATION; ANTHONY RAND; JAMES J. LINDSAY; JOSEPH A. JORDAN; PAUL BRIGGS,

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH**

_____

## REPLY BRIEF OF APPELLANT

_____

R. Scott Oswald
John T. Harrington, Jr.
EMPLOYMENT LAW GROUP, PC
888 17th Street, NW, Suite 900
Washington, DC  20006
(202) 261-2806

*Counsel for Appellant*

Michael C. Byrne
LAW OFFICES OF MICHAEL C. BYRNE, PC
Wachovia Capitol Center, Suite 1130
150 Fayetteville Street
Raleigh, North Carolina  27601
(919) 865-2572

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT .........................................................................................................1

      A.     The District Court applied an erroneous standard of causation; Feldman's protected conduct under SOX was a contributing factor, which properly applied is any factor, alone or in connection with other factors, that tends to affect in any way the outcome of the decision...................................................................1

      B.     Other evidence of retaliatory animus suffices where temporal proximity is lacking.............................................................................1

      C.     The District Court erred in viewing LEA's purported legitimate business reasons for Feldman's firing in a cumulative "historical" context while refusing to view evidence of causation in a similar cumulative "historical" context.........................3

      D.     The District Court erred in its finding of a "legitimate intervening event" because Feldman did not premise a causal inference upon temporal proximity .......................................................4

      E.     Feldman presented strong circumstantial evidence of ongoing retaliatory animus that demonstrated his protected conduct was a contributing factor ............................................................................5

      F.     LEA failed to demonstrate by clear and convincing evidence that it would have taken the same adverse action in the absence of Feldman's protected conduct ..........................................................7

      G.     Feldman engaged in protected conduct under SOX; and while the District Court said that it was "unclear" whether all of Feldman's activities were protected, its analysis supports a presumption that one or more were protected .......................................8

H.   If this Court deems that no presumption regarding protected conduct is warranted, it should still find that one or more of Feldman's activities were protected under SOX; and it should give *Chevron* deference to *Sylvester* in making that determination ........................................................................................9

I.   Under *Sylvester*, which should be accorded *Chevron* deference, protected activity does not require explicit references to specific violations ............................................................................................10

J.   Failing to maintain or implement a system of internal accounting control violates SEC rules and regulations; this is the basis for Feldman's protected conduct regarding his disclosures of LEA's exports through SAFE Source, and his complaints about LEA's failure to maintain accurate minutes ...........12

K.   Cases arising under Title VII, the NLRA, and the ADEA apply to the analysis of the burden-of-proof standards in Feldman's SOX claim ........................................................................................13

L.   Feldman accurately cited, and supported, the factual evidence he presented in his opening brief ........................................................14

CONCLUSION ........................................................................................15

REQUEST FOR ORAL ARGUMENT .................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984).......................................................................9, 10, 11, 16

*Collins v. Beazer Homes USA, Inc.*,
    334 F. Supp. 2d 1365 (N.D. Ga. 2004)......................................................7, 8

*Duprey v. Fla. Power & Light Co.*,
    2000- ERA-5 at 4 (ALJ July 13, 2000) .........................................................7

*EEOC v. Mental Health Auth. of St. Mary's, Inc.*,
    2008 WL 53254 (D. Md. 2008)................................................................1, 2

*Grogan v. Garner*,
    498 U.S. 279 (1991)........................................................................................7

*In re UAL Corp.*,
    2008 WL 450457 (Bankr. N.D. Ill. 2008) ...................................................14

*Jackson v. RKO Bottlers of Toledo, Inc.*,
    743 F.2d 370 (6th Cir. 1984) .........................................................................1

*McMahon v. Napolitano*,
    2013 WL 1410382 (E.D.N.Y. 2013) ...........................................................14

*Peck v. Safe Air Int'l, Inc.*,
    ARB No. 02-028, ALJ No. 2001-AIR-3 (ARB Jan. 30, 2004) ......................7

*Perez v. Progenics Pharm., Inc.*,
    2013 WL 3835199 (S.D.N.Y. 2013) ..............................................................1

*Platone v. Dep't of Labor*,
    548 F.3d 322 (4th Cir. 2008) ..................................................................10, 11

*Sussberg v. K-Mart Holding Corp.*,
   463 F. Supp. 2d 704 (E.D. Mich. 2006) ........................................................4

*Sylvester v. Parexel*,
   2011 WL 2517148 (May 25, 2011) ....................................................9, 10, 16

*Welch v. Chao*,
   536 F.3d 269 (4th Cir. 2008) ........................................................................11

*Wiest v. Lynch*,
   710 F.3d 121 (3d Cir. 2013) ..........................................................................11

*Woodson v. Scott Paper Co.*,
   109 F.3d 913 (3d Cir. 1997) ............................................................................2

**STATUTES**

15 U.S.C. § 78m(b)(2) ........................................................................................12

15 U.S.C. § 78m(b)(2)(B) ..................................................................................12

15 U.S.C. § 78m(b)(3)(B)(5) ..............................................................................12

18 U.S.C. § 1514A ......................................................................................10, 11

49 U.S.C. § 42121(b)(2)(B)(iii) ..........................................................................1

**REGULATION**

29 C.F.R. § 1980.104(c) ......................................................................................7

**OTHER AUTHORITY**

BLACK'S LAW DICTIONARY 1201 (7th ed. 1999)...........................................7

## ARGUMENT

**A.    The District Court applied an erroneous standard of causation; Feldman's protected conduct under SOX was a contributing factor, which properly applied is any factor, alone or in connection with other factors, that  tends to affect in any way the outcome of the decision.**

The District Court applied an erroneous standard of causation.  Feldman presented more than sufficient evidence of causation to meet the contributing factor standard.  His evidence, taken as a whole and analyzed properly, shows that his protected conduct under SOX played a role in LEA's decision to fire him. A contributing factor is "any factor which, alone or in connection with other factors, **tends to affect *in any way*** the outcome of the decision."  *See*, *e.g.*, *Perez v. Progenics Pharm., Inc.*, 2013 WL 3835199, at *10 (S.D.N.Y. 2013) (emphasis added) (citation omitted).  Feldman prevails merely by demonstrating that "retaliation for [his] protected conduct 'played some role' in the termination decision."  *See* 49 U.S.C. § 42121(b)(2)(B)(iii).

**B.    Other evidence of retaliatory animus suffices where temporal proximity is lacking.**

Where temporal proximity is lacking, courts may look to the intervening period for other evidence of retaliatory animus and evidence of recurring retaliatory animus during the intervening period can be sufficient.  *See EEOC v. Mental Health Auth. of St. Mary's, Inc.*, 2008 WL 53254, at *8 (D. Md. 2008); *see Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 n.4 (6th Cir. 1984)

1

(reversing judgment for defendant and remanding for further consideration where discharge occurred nearly one and one-half years after complaint but pattern of retaliation allegedly began soon after complaint was filed); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997) ("plaintiff can establish link between his or her protected behavior and subsequent discharge if the employer engaged in pattern of antagonism in the intervening period.").

Very little evidence of a causal connection is required, and temporal proximity is not required. *See Mental Health Auth. of St. Mary's, Inc.*, 2008 WL 53254, at *8 (emphasis added). Other evidence of retaliatory animus may satisfy the "very little" that is needed to plead causation. *See id.*

The District Court's only analysis of the contributing factor standard focused on temporal proximity. *See* JA at 4321. It also dismissed Feldman's strong evidence of the Outside Directors' recurring retaliatory animus, simply because some animus between Feldman and the Outside Directors had developed before Feldman's first protected activity. *See id.* at 4322. The District Court wrongly found that because there was animus prior to protected activity, "[t]his refutes [Feldman's] contention that LEA had a retaliatory motive in taking adverse action against [him]." *See id.* at 4322-23. By making this finding, the District Court demonstrates that it misapplied the contributing factor standard.

2

The fact that there was some animus between Feldman and the Outside Directors prior to his protected activity does not defeat causation. Feldman acknowledges that history of animus, while demonstrating that his protected conduct was nonetheless a factor in his firing. Tellingly, the District Court was untroubled by the lack of temporal proximity when it credited the cumulative effect of "a history of conflict" between Feldman and the Outside Directors in analyzing LEA's purported "legitimate business reason" for firing Feldman. *See* JA at 4300. The District Court, faced with the lack of temporal proximity between Feldman's move of the company and his firing, well over a year later, nonetheless said the move was a factor in LEA's decision to fire Feldman. *See id.* And it assessed Feldman's interactions with the LEA shareholder, Joe Wortley, as part of "a history of conflict," and not in isolation. *See id.*

**C.     The District Court erred in viewing LEA's purported legitimate business reasons for Feldman's firing in a cumulative "historical" context while refusing to view evidence of causation in a similar cumulative "historical" context.**

The District Court thus erred by giving LEA the benefit of all possible factual inferences regardless of temporal proximity while denying similar inferences to Feldman. It applied the lenient "contributing factor" analysis to LEA's legitimate business reason (for example, putting all evidence of "insubordination" by Feldman in a cumulative "historical" context free of any

3

requirement of temporal proximity) that it should have applied to causation. This error requires reversal.

In its Response, LEA also explains the firing as the culmination of various events separated in time. It argues that Feldman's criticism of the Outside Directors to Wortley was "the final straw" that caused the Outside Directors to fire him. *See* Appellee's Response Brief at 12; *see also* JA 1002 (deposition testimony of Chairman Anthony Rand, on behalf of LEA, explaining the reasons for Feldman's firing: "**It's a cumulative thing**; it was not any one specific event.") (emphasis added).

**D.    The District Court erred in its finding of a "legitimate intervening event" because Feldman did not premise a causal inference upon temporal proximity.**

The District Court misapplied the law when it found a "legitimate intervening event" in the Outside Directors' pretextual reaction to Feldman's Wortley negotiations. The case cited by the District Court discusses how "a 'legitimate intervening event' may defeat any causal inference that might be premised upon temporal proximity." *See* JA at 4323, citing *Sussberg v. K-Mart Holding Corp.*, 463 F. Supp. 2d 704, 713 (E.D. Mich. 2006). But Feldman did not premise a causal inference upon temporal proximity. He demonstrates a causal inference by other strong evidence independent of temporal proximity.

**E.    Feldman presented strong circumstantial evidence of ongoing retaliatory animus that demonstrated his protected conduct was a contributing factor.**

Feldman easily met his burden – not onerous to begin with – to demonstrate that his protected conduct was a contributing factor – at the least, it was one of the straws that, cumulatively, broke the camel's back.  Feldman, in his opening brief, presented strong circumstantial evidence of retaliatory animus, which coupled with other circumstantial evidence of retaliation, meets the contributing factor standard.

The Outside Directors reacted to Feldman's disclosure that Carrington had involved LEA in possible felonies by leaking the information to Carrington and pressuring Feldman to reveal the details of his meetings with federal investigators. The Outside Directors reacted with further hostility to Feldman's request that they affirm that they had not leaked information to Carrington.  The evidence permits an inference that the hostility engendered by Feldman's disclosure continued through Feldman's firing.

Feldman's protected activity in objecting to falsified Board meeting minutes was both a source of retaliatory animus and a reflection of retaliatory animus. Several of the false minutes involved Feldman's disclosure about Carrington and SAFE Source, and his related concerns about the Outside Directors' leaks and refusal to affirm that they had not leaked.  And this hostility continued through Feldman's firing.

5

After Feldman's protected activity, LEA deviated from its policies and practices in several ways that further demonstrated retaliatory animus. The Outside Directors insisted that Feldman obtain their prior approval before leasing new manufacturing space, a business decision that Feldman, as CEO, had made independently in the past. The Outside Directors accused him of providing insufficient financial information, though he provided the same information that had been sufficient in the past.

And LEA fired Feldman even though his performance as the company's leader remained strong. Under Feldman's leadership, LEA reported record income and a 260% increase in sales only ten days before it fired Feldman – this is undisputed. LEA, on this and other issues, tries to deny Feldman the benefit of disputed material facts, arguing that LEA's successes under his leadership owed nothing to his efforts (and trying to blame him for the bankruptcy that befell LEA long after his departure). LEA even points to the absence of Feldman's performance reviews. But as LEA's President and CEO, the quarterly report just before his firing is his most accurate review – and, again, that report showed record income and a 260% increase in sales.

LEA fired Feldman even though his performance as the company's leader remained strong. His insistence on moving the company reflected only good business judgment, not "insubordination," and the Outside Directors opposed it

6

only because they did not want to upset Carrington. Feldman's displeasure with the Outside Directors' inattention – including their failure to perform their Audit Committee duties – and his efforts to negotiate a deal with the Wortleys, demonstrated his commitment to LEA's success, and not "insubordination."

**F.  LEA failed to demonstrate by clear and convincing evidence that it would have taken the same adverse action in the absence of Feldman's protected conduct.**

Under the SOX framework, once a plaintiff in federal court has shown by a preponderance of the evidence that his protected activity was a contributing factor, the employer must demonstrate by clear and convincing evidence that it would have taken the same adverse action in the absence of the protected behavior. *See Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d 1365, 1376 (N.D. Ga. 2004); *see also* 29 C.F.R. § 1980.104(c). Clear and convincing evidence is "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *See Peck v. Safe Air Int'l, Inc.*, ARB No. 02-028 at 6, ALJ No. 2001-AIR-3 (ARB Jan. 30, 2004) (citing BLACK'S LAW DICTIONARY 1201 at 577 (7th ed. 1999)). This standard of evidence is a higher burden than "preponderance of the evidence," but less than "beyond a reasonable doubt." *See Duprey v. Fla. Power & Light Co.*, 2000- ERA-5 at 4 (ALJ July 13, 2000), *aff'd*, (ARB Feb. 27, 2003) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)). The SOX evidentiary framework

is thus "an analysis different from that of the general body of employment discrimination law." *See Collins*, 334 F. Supp. 2d at 1374, n.11.

LEA did not meet its burden to produce "clear and convincing evidence" of its purported legitimate business reason. The District Court erred in not analyzing LEA's proffered legitimate business reason, or Feldman's evidence of pretext, within the proper SOX evidentiary framework.

**G.    Feldman engaged in protected conduct under SOX; and while the District Court said that it was "unclear" whether <u>all</u> of Feldman's activities were protected, its analysis supports a presumption that one or more were protected.**

Feldman engaged in protected activity under SOX when he reported to LEA's Board, and to the federal government, that LEA's founder, former Chairman, and majority shareholder, John Carrington, had involved LEA in possible felonies relating to exports through a business Carrington owned; when he objected to falsified Board meeting minutes regarding those reports and other LEA matters; when he objected to leaks from the Outside Directors to Carrington regarding his reports of SAFE Source's activities; and when he objected to, and refused to pay, what he considered to be fraudulent invoices for legal services submitted by Finkelstein.

The District Court said that it was "unclear" whether **<u>all</u>** of the activities alleged by Feldman were protected by SOX, and it concluded that one of those activities – his report of suspected insider trading – was not protected. *See* JA at

8

4315-17 (emphasis added). In deciding that the report of suspected insider trading was not protected, the District Court engaged in extensive analysis of that report. *See id.* It also stated that it "assumed without deciding" that Feldman's other activities <u>were</u> protected. *See id.* (emphasis added).

Because the District Court subjected the report of suspected insider trading to thorough analysis before finding it unprotected, this Court should presume that the District Court also subjected Feldman's other activities to similarly thorough analysis – before "assuming" he had met the protected conduct element of his *prima facie* case. Again, the District Court said that it was "unclear" whether **all** of the activities were protected by SOX, which supports a presumption that one or more were protected.

**H.    If this Court deems that no presumption regarding protected conduct is warranted, it should still find that one or more of Feldman's activities were protected under SOX; and it should give *Chevron* deference to *Sylvester* in making that determination.**

If this Court agrees with LEA that no presumption on the protected conduct element is warranted, it should still find that one or more of Feldman's activities (listed above) were, in fact, protected under SOX. And in doing so, this Court must review its SOX precedents in light of the Department of Labor Administrative Review Board's holding, in *Sylvester v. Parexel*, 2011 WL 2517148 (May 25, 2011), that SOX protected activity is not limited to reporting fraud against shareholders.

9

In his Brief, Feldman sloppily asserted that *Sylvester* "overruled" this Court's decision in *Platone v. Dep't of Labor*, 548 F.3d 322 (4th Cir. 2008). *See* Appellant's Brief at 32. More precisely, and consistent with Feldman's analysis in his Brief, *Sylvester* overturned the Department of Labor precedents on which *Platone* relied. In 2011, the Department of Labor Administrative Review Board (ARB) held that SOX protected activity is not limited to reporting fraud against shareholders. *See Sylvester*, 2011 WL 2517148, at *15-18. A reasonable belief about a violation of any SEC regulation or rule embraces situations "in which the violation, if committed, is completely devoid of any type of fraud" – but is nonetheless protected. *See id.* at 17. An employee may also engage in protected activity under Section 806 even if he "fails to allege, prove, or approximate specific elements of fraud" and "fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation." *See id.* at 18.

I.    **Under *Sylvester*, which should be accorded *Chevron* deference, protected activity does not require explicit references to specific violations.**

In *Sylvester*, the ARB rejected the requirement that a communication, in order to be protected under SOX, must "definitively and specifically" relate to shareholder fraud or one of the statutes or rules listed in § 1514A, finding that requirement inconsistent with the purpose or language of § 1514A. *See id.* at *14–15. Instead, the ARB held, the complainant need only show that (1) he had a

subjective belief that the complained-of conduct constitutes shareholder fraud or a violation of one of the statutes or rules listed in § 1514A, and (2) the belief was objectively reasonable. *See id.*

The Supreme Court, this Court, and other Courts of Appeal afford deference to the Department of Labor's interpretation of SOX as expressed in formal regulations under *Chevron U.S.A.*, *Inc. v. Natural Resources Defense Council*, *Inc.*, 467 U.S. 837, 844 (1984).  ARB adjudications such as *Sylvester* should be afforded *Chevron* deference.

The Fourth Circuit has not reviewed its SOX precedents in light of *Sylvester*. But the Fourth Circuit held, in *Welch v. Chao*, 536 F.3d 269, 275-76 (4th Cir. 2008), that it affords *Chevron* deference to the ARB's interpretation of § 1514A of the Sarbanes–Oxley Act.  Other circuits, including the Third and the Tenth, that have reviewed their SOX precedents in light of *Sylvester* have deferred to the ARB's more expansive interpretation of protected activity.  *See*, *e.g.*, *Wiest v. Lynch*, 710 F.3d 121, 129-31 (3d Cir. 2013) (affording *Chevron* deference to *Sylvester* and thus holding an employee complaint need not specifically relate to shareholder fraud to be actionable under SOX, and rejecting *Platone's* "definitive and specific" standard).

**J.     Failing to maintain or implement a system of internal accounting control violates SEC rules and regulations; this is the basis for Feldman's protected conduct regarding his disclosures of LEA's exports through SAFE Source, and his complaints about LEA's failure to maintain accurate minutes.**

Section 13(b)(2)(B) of the Securities and Exchange Act of 1934 requires a publicly traded company to devise and maintain an adequate system of internal accounting controls.  15 U.S.C. § 78m(b)(2)(B), Section 13(b)(2), and the SEC's implementing rules, prohibit any person from "knowingly circumvent[ing] or knowingly fail[ing] to implement a system of internal accounting controls." *See* 15 U.S.C. § 78m(b)(3)(B)(5).

Feldman engaged in protected activity under SOX when he reported LEA's potential liability for the SAFE Source exports to LEA's Board, and to the federal government.  He reasonably believed, both subjectively and objectively, that the sales exposed a failure of LEA's internal controls.   LEA attempts to have the benefit of disputed material facts by arguing that Feldman either did know, or should have known, that Carrington owned SAFE Source.  But that only underscores the lack of internal controls implicated by the sales.  Taking the disputed facts in the light most favorable to Feldman, LEA lacked proper controls to ensure that it knew who owned a company through which it contracted to export tightly controlled surveillance equipment.  Feldman brought that control failure to

12

the Board's attention and then disclosed it to federal agents to ensure that any

potential consequences to LEA were minimized.

Feldman engaged in similar protected activity when he objected to the

Outside Directors' falsified minutes, and when he objected to the suspected leaks

from the Outside Directors to Carrington.  When he objected to, and refused to

pay, what he considered fraudulent invoices presented for Finkelstein's services,

he put the Board on notice of potential mail and wire fraud and thus engaged in

additional protected conduct.

**K.     Cases arising under Title VII, the NLRA, and the ADEA apply to the analysis of the burden-of-proof standards in Feldman's SOX claim.**

LEA correctly points out that SOX regulations are patterned after

regulations implementing the Aviation Investment and Reform Act for the 21st

Century (AIR21), the Surface Transportation Assistance Act (STAA), and the

Energy Reorganization Act (ERA).  *See* Response at 28.  LEA is wrong, though,

when it claims that the Title VII, FLSA, ADEA, and NLRB cases cited by

Feldman have no bearing on whether Feldman presented a *prima facie* case under

SOX.  *See id.*; *see also* Response at 21 n.5.  The cases arising under Title VII and

the other statutes are relevant to the causation and pretext analysis of Feldman's

claim.

The DOL-enforced whistleblower statutes, including SOX, were modeled on

the National Labor Relations Act and the Mine Safety and Health Act.  *See*, *e.g.*, *In*

13

*re UAL Corp.*, 2008 WL 450457, at *6-7 (Bankr. N.D. Ill. 2008). And the DOL

seeks guidance from retaliatory discharge cases arising under Title VII to interpret

federal whistleblower statutes, including SOX. *See id.* Decisions under Title VII

articulate how circumstantial evidence may be used to substantiate a discrimination

claim where there is no direct evidence of discrimination, and such Title VII

precedent applies to AIR21 claims – and thus to SOX claims. *See id.* And ADEA

precedent regarding burden-of-proof standards apply to SOX because courts

analogize the ADEA to Title VII in formulating burden-of-proof and order-of-

proof standards for ADEA suits. *See*, *e.g*, *McMahon v. Napolitano*, 2013 WL

1410382, at *1 (E.D.N.Y. 2013).

**L.     Feldman accurately cited, and supported, the factual evidence he presented in his opening brief.**

LEA accuses Feldman of "grossly misstat[ing] the evidence" in his opening

brief, making the incredible claim that his citations to the JA "more often than not

[ ] do not in any way support the point he is trying to make." To support this, LEA

points to a handful of purported instances of "misstated" evidence, in the process

distorting the citation or its context. Feldman stands by his citations and welcomes

the Court's close scrutiny.

Interestingly, one of the examples offered by LEA undercuts one of the

many weak factual inferences made by LEA in its response – the claim that there

was "no showing that Littman was acting on Feldman's behalf" when Littman

objected to Finkelstein's minutes.  LEA directs the Court to a citation to JA pages

3216-20.  At JA 3219, Finkelstein testified as follows: "I can explicitly recall

situations where minutes I drafted would be viewed as accurate by the majority of

the board [i.e., the Outside Directors] on all matters. And then on some matters,

**<u>Mr. Feldman and Mr. Perry, through Mr. Littman, would indicate a different</u>**

**<u>view</u>**."  JA 3219, Finkelstein Depo. at 83:4-8 (emphasis added).

## CONCLUSION

The District Court applied an erroneous standard of causation.  Feldman

presented more than sufficient evidence of causation to meet the contributing

factor standard.  The fact that there was some animus between Feldman and the

Outside Directors prior to his protected activity does not defeat causation.  The

District Court erred in viewing LEA's purported legitimate business reasons for

Feldman's firing in a cumulative "historical" context while refusing to view

evidence of causation in a similar cumulative "historical" context.

The District Court erred in its finding of a "legitimate intervening event"

because Feldman did not premise a causal inference upon temporal proximity.

Feldman presented strong circumstantial evidence of ongoing retaliatory animus

that demonstrated his protected conduct was a contributing factor.  And LEA failed

to demonstrate by clear and convincing evidence that it would have taken the same

adverse action in the absence of Feldman's protected conduct.

15

Feldman engaged in protected conduct under SOX; and while the District Court said that it was "unclear" whether <u>all</u> of Feldman's activities were protected, its analysis supports a presumption that one or more were protected.  If this Court deems that no presumption regarding protected conduct is warranted, it should still find that one or more of Feldman's activities were protected under SOX; and it should give *Chevron* deference to *Sylvester* in making that determination.

Failing to maintain or implement a system of internal accounting control violates SEC rules and regulations; this is the basis for Feldman's protected conduct regarding his disclosures of LEA's exports through SAFE Source.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully renews his requests that this Court schedule oral argument on his appeal.  Oral argument is appropriate because the issues presented are complex.

Respectfully submitted,

/s/ John T. Harrington
R. Scott Oswald
John T. Harrington
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
tharrington@employmentlawgroup.com

Michael C. Byrne
Law Offices of Michael C. Byrne, PC
Wachovia Capitol Center, Suite 1130
150 Fayetteville Street
Raleigh, NC 27601
Phone (919) 865-2572
michael@mcbyrnelaw.com
Local Civil Rule 83.1 Counsel
NC Bar #22690

*Counsel for Appellant Paul H. Feldman*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [**3,619**] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:   <u>11/06/2013</u>                    <u>/s/</u> John T. Harrington
                                         Attorney for Appellant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 6th day of November, 2013, I caused this Reply

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Helen F. Hiser
> Amy Y. Jenkins
> MCANGUS, GOUDELOCK & COURIE, LLC
> Post Office Box 650007
> Mount Pleasant, South Carolina 29465
> (843) 567-2930

> *Counsel for Appellees*

> /s/ John T. Harrington
> Attorney for Appellant